MURIEL P. GROVER *v.* TOWN OF MANCHESTER ET AL.
(No. 7591)

MURIEL P. GROVER *v.* TOWN OF MANCHESTER ET AL.
(No. 7606)

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

Argued December 10, 1974—decision released March 4, 1975

*Maurice T. FitzMaurice,* for the appellant (named defendant in both cases).

*Thomas P. FitzGerald,* with whom, on the brief, was *Herbert A. Phelon, Jr.,* for the appellee (plaintiff in both cases).

MacDonald, J. The issues raised by these two reservations, one from the Superior Court and one from the Court of Common Pleas under the same name, are identical and involve the constitutionality of § 7-433c of the General Statutes entitled "Benefits for policemen or firemen disabled or dead as a result of hypertension or heart disease."

The relevant facts, as stipulated by the parties, are as follows: The plaintiff, Muriel Grover, is a dependent of Leo Grover, hereafter Grover, who died on September 7, 1971, from a coronary occlusion and who, at the time of his death, was employed as a regular paid member of the police department of the defendant town of Manchester. When first employed as a policeman, Grover successfully passed a physical examination which revealed no evidence of hypertension or heart disease. He did not sustain any accidental injury arising out of and

in the course of his employment or suffer any repetitive trauma or acts which caused or contributed to his death, nor did he suffer from any occupational disease. His death was not compensable within the meaning of chapter 568 of the General Statutes, the Workmen's Compensation Act, and the commissioner, at a hearing, denied offers of the defendant town of Manchester to prove the foregoing facts concerning the cause of death. The commissioner also declined to decide the constitutional questions raised by the defendant town, and these questions, by stipulation, have been reserved to this court under the provisions of § 31-324 for reservations from the Superior Court, and § 31-301 for reservations from the Court of Common Pleas, in workmen's compensation appeals. The two questions thus reserved are as follows: (1) Does § 7-433c of the General Statutes deprive the town of Manchester of property without due process of law in violation of the due process clauses of the United States and Connecticut constitutions? (2) Does the class preference created by § 7-433c contravene § 1 of article first of the Connecticut constitution?

Section 7-433c recently was before us in *Grover* v. *Manchester,* 165 Conn. 615, 353 A.2d 719, raising a procedural issue which was decided without a resolution of the two collateral constitutional questions raised here. It was enacted in its present form in 1971, as set forth in full in the footnote,[1] within two weeks of our decision in

[1] "[Public Acts 1971, No. 524 § 1; General Statutes] Sec. 7-433c. BENEFITS FOR POLICEMEN OR FIREMEN DISABLED OR DEAD AS A RESULT OF HYPERTENSION OR HEART DISEASE. In recognition of the peculiar problems of uniformed members of paid fire departments and regular members of paid police departments, and in recognition of the unusual risks attendant upon these occupations, including an unusual high degree of susceptibility to heart disease and hypertension, and

*Ducharme* v. *Putnam*, 161 Conn. 135, 285 A.2d 318, which declared unconstitutional a predecessor statute, Public Acts 1969, No. 380 § 1 (§ 7-433a), which had attempted to provide benefits identical to those of the statute now before us by raising a conclusive presumption. In *Ducharme*, we did not consider the merits of the legislature's intended purpose but only the method employed to attain that purpose.

in recognition that the enactment of a statute which protects such fire department and police department members against economic loss resulting from disability or death caused by hypertension or heart disease would act as an inducement in attracting and securing persons for such employment, and in recognition, that the public interest and welfare will be promoted by providing such protection for such fire department and police department members, municipal employers shall provide compensation as follows: Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. As used in this section, the term 'municipal employer' shall have the same meaning and shall be defined as said term is defined in section 7-467."

In other words, our legislature promptly acted to do what this court could not do and refused to do in *Ducharme* and it rewrote the statute by simply providing special compensation, or even an outright bonus, to qualifying policemen and firemen.

As we stated recently in *Whitfield* v. *Empire Mutual Ins. Co.*, 167 Conn. 499, 507, 356 A.2d 139: " '[A] plaintiff who attacks a statute on constitutional grounds has no easy burden.' . . . 'When the constitutionality of legislation is in question, it is the duty of the court to sustain it unless its invalidity is beyond a reasonable doubt. . . . It is a rule of statutory construction . . . that courts are bound to assume that the legislature, in enacting a particular law, did so upon proper motives and to accomplish a worthy objective.' " Although the statute under consideration is not regulatory, it does impose upon a town a financial obligation which, like restrictive regulations, is justified in the interest of promoting public safety, and does not deprive a town of property without due process of law.

It is difficult to call to mind any field of activity more closely related to the public safety than that which seeks to encourage qualified individuals to seek employment as firemen and policemen.[2] It is evident from the preamble to § 7-433c that the legislature took into consideration the peculiar problems and unusual risks attendant upon these occupations in determining that they properly occupy a different status from other municipal employees. No other group has to withstand the abuses and attacks of the oppressed and frustrated of our

[2] We employ the exact terminology of the statute rather than the more recent references to "firepersons" and "policepersons."

modern society or carry with them a constant appre-
hension that they may be the target of maniacal
revenge; no other municipal employees are called
out from the security of their homes to ensure the
security of the homes of others; no other municipal
employees are required to make immediate deci-
sions which are the subject of debate and delibera-
tion in our courts. This is, indeed, class legislation
somewhat analogous to the veterans' bonus legisla-
tion which passed the constitutional tests applied in
*Lyman* v. *Adorno,* 133 Conn. 511, 514, 52 A.2d 702,
and we refer to the extensive collection of authori-
ties cited in the opinion in that case.

We conclude that the statute under consideration
serves a proper public purpose and that, accord-
ingly, the fact that it incidentally confers a direct
benefit upon a certain class of individuals does not
render it invalid as creating a class preference
which contravenes § 1 of article first of the Con-
necticut constitution.

For the foregoing reasons, each of the two ques-
tions submitted to us by reservation from the
Court of Common Pleas in No. 7591 must be
answered in the negative.

Since the same two questions have been raised
by reservation from the Superior Court in No. 7606,
it would appear to serve no useful purpose and only
to create unnecessary duplication of procedure and
expense to require rendition of judgment in that
court based upon identical answers. The reserva-
tion from the Court of Common Pleas was filed
pursuant to § 31-301 of the General Statutes, which
provides that all appeals from an award by a work-
men's compensation commissioner shall be taken to

the Court of Common Pleas.[3] As originally adopted in 1961, this section provided for such appeals to be taken to the Superior Court, but it was amended in 1972 (Public Act No. 108, § 6, effective September 1, 1972) by the substitution throughout of "Court of Common Pleas" for "Superior Court." At that time, no action was taken specifically to amend or repeal § 31-324, which then provided, as it does now, for reservation by the Superior Court to this court, "[w]hen, in any case arising under the provisions of this chapter, the superior court is of the opinion that the decision involves principles of law which are not free from reasonable doubt," and, further, that a pro forma award be made by the commissioner pending the opinion of this court on such reservation.[4] The reference to "any case arising

---

[3] The relevant portions of § 31-301, at all times pertinent to this action read, and presently read, as follows: "At any time within ten days after entry of such award by the commissioner or after a decision of the commissioner upon a motion, either party may appeal therefrom to the court of common pleas for the county in which the injury occurred . . . . The procedure in appealing from an award of the compensation commissioner shall be the same as the procedure employed in an appeal from the court of common pleas to the supreme court."

[4] Section 31-324, at all times pertinent to this action read, and presently reads, as follows: "RESERVATION OF CASES FOR THE SUPREME COURT. When, in any case arising under the provisions of this chapter, the superior court is of the opinion that the decision involves principles of law which are not free from reasonable doubt and which public interest requires shall be determined by the supreme court, in order that a definite rule be established applicable to future cases, said court may, on its own motion and without any agreement or act of the parties or their counsel, reserve such case for the opinion of the supreme court. Upon a reservation so made, no costs shall be taxed in favor of either party, and no entry fee, record fee, judgment fee or other clerk's fee in either court shall be taxed. If the commissioner finds that a claim before him involves a doubtful question of law, which the public interest requires should be finally and definitely determined, he may find the facts as in other cases and make his award, indicating that it is pro forma. A pro forma

under the provisions of this chapter" identifies such a case as falling within the broad spectrum covered by § 31-301, and the conclusion is at least logical, if not inescapable, that it was only through oversight that § 31-324 was not either expressly repealed or amended by substituting "Court of Common Pleas" for "Superior Court" wherever the latter appears therein. In addition to that consideration, the provisions of Public Act No. 74-183, effective December 31, 1974, for appellate sessions of the Superior Court for the review of cases on appeal from the Court of Common Pleas, lead us to the conclusion that the reservation from the Court of Common Pleas was the proper procedure to follow and that the reservation from the Superior Court should be and hereby is dismissed for lack of jurisdiction.

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.

---

award shall be of the same effect as an award in ordinary cases except in the following particulars: On the filing of a pro forma award, the question shall come before the superior court as though an appeal had been taken, and said court shall thereupon reserve the case for the opinion of the supreme court in the manner herein indicated; but if, in the opinion of the superior court, the principles of law involved in the decision are in fact free from reasonable doubt and the public interest does not in fact require that they be determined by the supreme court, the superior court may, in its discretion, hear and determine the controversy as in other cases."