TOWN OF PLAINVILLE *v*. TRAVELERS INDEMNITY COMPANY

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued June 15—decision released August 21, 1979

*Richard M. Corr,* corporation counsel, for the plaintiff.

*Robert C. Danaher,* with whom, on the brief, was *James T. Flaherty,* for the defendant.

COTTER, C. J. The parties have stipulated as to the following relevant facts: On July 1, 1975, Raymond Bourgoing, a paid, regular, uniformed member of the Plainville police department, suffered a heart seizure in a doctor's office in Plainville. He was taken by ambulance to New Britain General Hospital and was subsequently released. Bourgoing died on July 7, 1975, due to an acute miocardial infarction. Bourgoing had previously passed a physical examination which failed to indicate evidence of heart disease or hypertension. He was survived by his widow, Marie A. Bourgoing.

On December 5, 1975, the plaintiff town was notified of Mrs. Bourgoing's intention to file a claim for benefits under General Statutes §§ 7-433a and 7-433c. Subsequently, the plaintiff filed a notice with the workmen's compensation commission of its intention to contest liability to pay compensation on the ground that it denied that "the injury complained of arose out of and during the course of the claimant's employment." At an informal hearing on February 23, 1976, however, the plaintiff town conceded that the claim for benefits was valid under § 7-433c. Consequently, on February 25, the commissioner's finding and award was issued granting benefits to the claimant in accordance with the provisions of General Statutes § 7-433c.

Thereupon, counsel for the plaintiff notified the defendant, Travelers Indemnity Company, that the town considered the Bourgoing claim to be within

the purview of the "Workmen's Compensation and Employer's Liability Policy" issued to the plaintiff town by the defendant and in effect at all times relevant to that claim. On March 15, 1976, the defendant denied the plaintiff's claim under the policy on the ground that the policy did not provide coverage for claims made under General Statutes § 7-433c, and the present litigation ensued.

Following the trial court's decision overruling the defendant's demurrer to the plaintiff's amended complaint alleging a breach of the policy provisions, the court, at the request and with the consent of all the parties, reserved the following question for the consideration and advice of this court: "Does the 'Workmen's Compensation and Employer's Liability Policy' number DK UB 446B846-3 75 issued by Travelers Indemnity Company to the Town of Plainville provide coverage for the benefits to which Marie A. Bourgoing is entitled under Section 7-433c, Connecticut General Statutes, by virtue of the death of her husband, Officer Raymond Bourgoing of the Town of Plainville Police Department?"

The pertinent provisions of the policy between the plaintiff and the defendant obligate the insurer "[t]o pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law," and define the term "workmen's compensation law" as "the workmen's compensation law and any occupational disease law" of the state of Connecticut "but does not include those provisions of any such law which provide non-occupational disability benefits." General Statutes § 7-433c, the provision under which Marie Bourgoing was granted compensation for the death of her hus-

band, mandates, upon the satisfaction of certain preconditions, that municipalities pay compensation for the death or disability of municipal policemen and firemen who suffer "either off duty or on duty any condition or impairment of health caused by hypertension or heart disease." Consequently, the determinative issue as framed in this case can be simply stated: Was the compensation awarded to Marie Bourgoing under § 7-433c an award of occupational disability benefits required to be paid by the plaintiff under a workmen's compensation law or occupational disease law of this state?

## I

Connecticut statutes concerning compensation for policemen and firemen who die or are disabled as a result of hypertension or heart disease have had a rather tumultuous history. In 1951, the General Assembly enacted a statute providing that any impairment of health caused by hypertension or heart disease resulting in the total or partial disability of a uniformed member of a paid municipal fire department who successfully passed a physical examination on entry into such service shall be presumed to have been suffered in the line of duty. Sup. 1951 § 175b. The rebuttable presumption afforded to firemen was, in 1953, made applicable to regular members of paid, municipal police departments; Sup. 1953 § 308c; and, in 1955, was applied to situations where death, as well as disability, results. Sup. 1955 § 407d.

This provision, which was repealed and reenacted in 1961 as General Statutes § 7-433a; Public Acts 1961, No. 330, §§ 1, 2; was amended by the legislature in 1967 making it explicit that the statute applies

whether the condition occurs while the policeman or fireman is on duty or off duty at the time. Public Acts 1967, No. 770, § 1. Apparently still dissatisfied with the restrictive implementation of those provisions, the General Assembly, in 1969, again amended the statute by making the state retirement system applicable to this section and by substituting a conclusive presumption that the hypertension or heart disease arose out of and in the course of the employee's employment in lieu of the simple presumption. Public Acts 1969, No. 380, § 1.

In *Ducharme* v. *Putnam,* 161 Conn. 135, 285 A.2d 318, however, this court held (p. 143) that the conclusive presumption prescribed by General Statutes § 7-433a in the adjudication of workmen's compensation cases was in contravention of the due process clauses of both the state and federal constitutions since it operated to completely bar an employer from attempting to prove the negative fact that in a contested case a heart ailment was not causally connected with the employment. In obvious response to the suggestion in *Ducharme* that the objective of this legislation might be constitutionally attained by "legislation requiring municipalities to provide special compensation or a bonus for policemen and firemen or supplemental or special risk insurance in the case of such occupations"; id., 144; the General Assembly thereafter enacted § 7-433c in its present form. Upon a subsequent constitutional challenge, the validity of § 7-433c was sustained in 1975 in *Grover* v. *Manchester,* 168 Conn. 84, 357 A.2d 922, appeal dismissed, 423 U.S. 805, 96 S. Ct. 14, 46 L. Ed. 2d 26. In *Grover,* we concluded that this statute, which "simply [provides] special compensation, or even an outright bonus, to qualifying policemen and firemen," serves a proper public purpose and does

not create a class preference which contravenes § 1 of article first of the Connecticut constitution. Id., 88–89; see *Wilson* v. *Connecticut Product Development Corporation,* 167 Conn. 111, 118, 355 A.2d 72.

Mindful of the above historical background, we now address the central issue involved in the present appeal—that is, the proper characterization of the benefits paid pursuant to the provisions of General Statutes § 7-433c.

## II

"The purpose of the workmen's compensation law has always been to provide compensation for an injury arising out of and in the course of the employment regardless of fault . . . ." *Klapproth* v. *Turner,* 156 Conn. 276, 279, 240 A.2d 886; *Bassett* v. *Stratford Lumber Co.,* 105 Conn. 297, 298–99, 135 A. 574; see 1 Larson, Workmen's Compensation § 1. Although in some states work-related, compensable "injuries" were strictly limited to "accidental bodily injuries" under workmen's compensation provisions; see 1B Larson, op. cit. §§ 41.00–41.31; *Miller* v. *American Steel & Wire Co.,* 90 Conn. 349, 97 A. 345; all states now provide at least some coverage for "occupation diseases." 1B Larson, op cit. § 41.10; see *De la Pena* v. *Jackson Stone Co.,* 103 Conn. 93, 96–98, 130 A. 89; *Dupre* v. *Atlantic Refining Co.,* 98 Conn. 646, 651–52, 120 A. 288; see General Statutes § 31-275 (Rev. to 1979). Under Connecticut's workmen's compensation provisions; General Statutes c. 568; a compensable injury includes an "occupational disease" which is defined to include "any disease peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such."

General Statutes § 31-275; see *Niedzwicki* v. *Pequon-nock Foundry*, 133 Conn. 78, 48 A.2d 369; *Glodenis* v. *American Brass Co.*, 118 Conn. 29, 37, 170 A. 146.

As discussed in part I, supra, the predecessor provisions of General Statutes § 7-433c did not, in themselves, require the payment of benefits to eligible firemen and policemen. Rather, those enactments simply provided these specific municipal employees with an advantage in proceeding under the workmen's compensation law of this state where benefits were sought for death or disability due to heart ailments.

By contrast, General Statutes § 7-433c (Rev. to 1979) is not a legislative attempt to place such policemen and firemen in a superior position in proceedings under chapter 568. "Notwithstanding any provision of chapter 568 . . . to the contrary," General Statutes § 7-433c specifically requires the payment of compensation to firemen and policemen who have successfully passed a physical examination which failed to reveal any evidence of hypertension or heart disease and who subsequently die or are disabled as a result of such conditions. It casts no burden of proof upon the claimant to show that such disease resulted from the employee's occupation or that it occurred in the line and scope of his employment. The mere fact that a fireman or policeman has hypertension or heart disease and dies or is disabled as a result thereof qualifies him or his dependents for benefits under this section.[1]

---

[1] "[General Statutes] Sec. 7-433c. BENEFITS FOR POLICEMEN OR FIREMEN DISABLED OR DEAD AS A RESULT OF HYPERTENSION OR HEART DISEASE. In recognition of the peculiar problems of uniformed members of paid fire departments and regular members of paid police departments, and in recognition of the unusual risks attendant upon these occupations, including an unusual high degree of susceptibility

The procedure for obtaining compensation and the measure of that compensation under General Statutes § 7-433c is the same as that outlined in chapter 568. In the first case of *Grover* v. *Manchester,* 165 Conn. 615, 617–18, 353 A.2d 719, we concluded that the legislature saw fit to limit the "procedural avenue" for bringing claims under § 7-433c to that already existing under chapter 568 rather than require the duplication of the administrative machin-

to heart disease and hypertension, and in recognition that the enactment of a statute which protects such fire department and police department members against economic loss resulting from disability or death caused by hypertension or heart disease would act as an inducement in attracting and securing persons for such employment, and in recognition, that the public interest and welfare will be promoted by providing such protection for such fire department and police department members, municipal employers shall provide compensation as follows: Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems."

ery available under the workmen's compensation act and further burden the courts and the municipalities with additional litigation from claims by firemen and policemen pursuant to this legislation. The fact that a § 7-433c claim is administered in the same manner *as if* it were successfully pursued under chapter 568, however, does not, as the plaintiff argues, lend support to its claim that the payments made to Marie Bourgoing were benefits required of it "by the workmen's compensation law" under the terms of the policy coverage. As we have noted previously, unlike earlier related provisions, § 7-433c itself requires the payment of compensation and does not simply establish a presumption in certain cases brought under the provisions of chapter 568. In sum, in the present case, the plaintiff's liability arose solely under § 7-433c and not under the provisions of the workmen's compensation act, the procedures of which are used in the adjudication of § 7-433c claims.[2] Within the context and the facts of this case we cannot approve of *Pyne* v. *New Haven,* 177 Conn. 456, 461, 418 A.2d 899, to the extent that a contrary view is expressed therein.

Nor do we agree with the plaintiff that the compensation paid in this case can be characterized as occupational disability benefits required of the

[2] An amendment to General Statutes § 7-433c subsequent to the initiation of the present litigation lends further support to the conclusion that a payment made under this section is not a benefit required by Connecticut workmen's compensation law but is a separate, legislatively-mandated "bonus" to this distinctive class of municipal employees. See *Atwood* v. *Regional School District No. 15,* 169 Conn. 613, 623, 363 A.2d 1038. Public Acts 1977, No. 77-520, § 1 amended § 7-433c by adding a sentence which, in relevant part, provides as follows: "The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of Chapter 568 . . . ."

insured by an "occupational disease law" of this state. Although the preamble to General Statutes § 7-433c indicates a legislative *recognition* of the risks to which policemen and firemen are exposed, "including an unusual high degree of susceptibility to heart disease and hypertension," we do not construe such language as the equivalent of a *legislative finding* that all heart ailments suffered by firemen and policemen are causally related to their employment as the plaintiff seems to suggest. Indeed, other language in the preamble equally reveals a legislative recognition that the enactment of this statute "would act as an inducement in attracting and securing persons for such employment," and that "the public interest and welfare will be promoted by providing such protection." The fact that the constitutionality of § 7-433c as "class preference" legislation was upheld by this court in the second case of *Grover* v. *Manchester,* 168 Conn. 84, 357 A.2d 922, appeal dismissed, 423 U.S. 805, 96 S. Ct. 14, 46 L. Ed. 2d 26, as serving a proper public purpose, does not compel a conclusion that the statute implicitly includes an affirmative legislative finding of work-relatedness in all cases. See *Lyman* v. *Adorno,* 133 Conn. 511, 521, 52 A.2d 702.

In the absence of a requirement that a heart ailment must be causally connected to the claimant's employment, therefore, we cannot conclude that benefits paid by an employer under General Statutes § 7-433c are benefits required by a "workmen's compensation law" or "occupational disease law" of this state. Cf. *City of Manitowoc* v. *Iowa National Mutual Ins. Co.,* 68 Wis. 2d 722, 229 N.W.2d 577, 579. To do so would require us to ignore the plain effect of this legislation and to contradict our own characterization of this legislation as "providing

special compensation, or even an outright bonus, to qualifying policemen and firemen." *Grover* v. *Manchester,* 168 Conn. 84, 88, 357 A.2d 922. Moreover, our holding that § 7-433c is neither a "workmen's compensation law" nor "occupational disease law" within the meaning of the policy provisions of the insurance contract involved in this case is fortified by an examination of the discussion and debate on the floor of the state House of Representatives prior to the passage of this statute which reveals a legislative understanding that payments made pursuant to this provision would not be within the coverage of traditional workmen's compensation insurance policies.[3] The fact that a policy of insurance against liability under chapter 568 must cover the entire liability of the employer thereunder; General Statutes § 31-287; has no application to employer liability imposed by special bonus legislation unrelated to traditional workmen's compensation concepts.

"If the terms of an insurance policy are of doubtful meaning, that permissible construction which is

---

[3] During the debate on the floor of the House of Representatives, Representative Robert D. King raised the following question:

"Mr. Speaker, one question, through you to either Rep. Stevens or Rep. Badolato, in the wisdom of the Supreme Court, as I understand the decision, the particular member of the department is not covered by workmen's compensation and, as a result, this bill would, in effect, shift the burden to the town, to the municipality. Now, my question, very briefly, is this—In what manner is the town compensated for this potential liability? Does the town, in turn, insure or does it come out of the town's general fund or is there some other method of compensating for any payments that will have to be made under the bill?"

Representative Gerald F. Stevens, who introduced the bill in the House, responded as follows:

"That would be the determination of the particular municipality who could either choose to insure against this particular risk or pay for it out of the general revenues of the municipality if they chose to be a self-insurer for the purposes of this legislation." 14 H.R. Proc., Pt. 8, 1971 Sess., pp. 3526–27.

most favorable to the insured is to be adopted; but if [as here] they are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties. *Komroff* v. *Maryland Casualty Co.*, 105 Conn. 402, 405, 135 A. 388." *Porto* v. *Metropolitan Life Ins. Co.*, 120 Conn. 196, 200, 180 A. 289; see *Aschenbrenner* v. *U.S. Fidelity & Guaranty Co.*, 292 U.S. 80, 84, 54 S. Ct. 590, 78 L. Ed. 1137. In a case such as the one before us, therefore, the liability of the insurer is not to be extended beyond the express terms of the contract. *Weingarten* v. *Allstate Ins. Co.*, 169 Conn. 502, 510, 363 A.2d 1055; *Miller Brothers Construction Co.* v. *Maryland Casualty Co.*, 113 Conn. 504, 513, 155 A. 709.

Accordingly, the question submitted to us by reservation is answered in the negative.

No costs will be taxed in favor of any party.

In this opinion the other judges concurred.