CITY OF WEST HAVEN, Plaintiff,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Defendant.

Civ. A. Nos. N–82–570 (TFGD), N–83–253 (TFGD).

United States District Court, D. Connecticut.

July 2, 1986.

Peter F. Culver, Keith Bradoc Gallant, Steven G. Mednick, Gallant, Gallant & Culver, New Haven, Conn., for plaintiff.

Harold C. Donegan, Barry P. Beletsky, Sperandeo, Weinstein & Donegan, New Haven, Conn., for defendant.

## MEMORANDUM OF DECISION

DALY, Chief Judge.

Plaintiff City of West Haven filed a suit docketed as civil number N–82–570, alleging breach of contract by the defendant insurance company as a result of its failure to defend the city against workmen's compensation and related claims brought against the city by police officers who were city employees. The complaint also alleged breach of contract by failure to indemnify the city for its payments of the awards in the underlying claims. The second count of the complaint sounds in tort, alleging bad faith on the part of the insurance company.

The complaint in civil action number N–83–253 (TFGD), involving identical parties, alleges, as in civ. no. N–82–570 (TFGD), breach of contract by failure to defend and by failure to indemnify. The Court granted a joint motion to consolidate the two cases for trial. The cases were tried to the

Court, sitting without a jury, on November 13, 1985. Having reviewed the parties' proposed findings of fact and conclusions of law and the evidence presented at trial, the Court finds that plaintiff is entitled to recovery on the claim alleging breach of contract by failure to defend in both complaints. In all other respects, the Court finds in favor of the defendant. The Court enters the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. The City of West Haven ("West Haven") is a municipal corporation incorporated under the laws of the State of Connecticut and has its principal place of business in the State of Connecticut. At all times relevant to this action, West Haven was an employer within the meaning of the provisions of Connecticut General Statutes ("Conn.Gen.Stat.") Chapter 568 (Workmen's Compensation). West Haven is both a municipality and a municipal employer within the provisions of Conn.Gen.Stat. Ch. 113, sec. 7–433a (Disability and death benefits for policemen and firemen resulting from heart disease or hypertension). Liberty Mutual Insurance Company ("Liberty Mutual") is a Massachusetts corporation with its principal place of business in a state other than Connecticut.

2. Liberty Mutual issued a workmen's compensation liability insurance policy to West Haven. The policy was in effect at the time the underlying claims by city police officers arose.

3. The policy contains the following relevant provisions:

[The] company agrees with the insured
...

*Coverage A—WORKMEN'S COMPEN-SATION* To pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law.

*Coverage B—EMPLOYER'S LIABILI-TY* To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease ... sustained by any employee of the insured arising out of and in the course of his employment by the insured. *EXCLUSIONS* This policy does not apply: ... (f) under coverage B, to any obligation for which the insured ... may be held liable under the workmen's compensation or occupational disease law....

*DEFENSE* As respects the insurance afforded by the other terms of this policy the company shall: (a) defend any proceeding against the insured seeking such benefits and any suit against the insured alleging such injury and seeking damages on account thereof, even if such proceeding or suit is groundless, false, or fraudulent....

*NOTICE OF CLAIM OR SUIT* If claim is made or suit or other proceeding is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

4. During the policy period or during the renewal period, seven West Haven police officers suffered disability as a result of heart disease or hypertension. All the police officers filed claims with the Workmen's Compensation Commission (the "Commission") alleging injuries covered under the Workmen's Compensation Act, Ch. 568. Some of the claims also alleged recovery under either or both of two sections of Chapter 113, section 7–433a and section 7–433c. All seven of the claims were filed with the Commission prior to August 21, 1979.

5. West Haven has been paying medical expenses or compensation to or for the benefit of each of the seven police officer claimants pursuant to awards made to six of the seven claimants by the Workmen's Compensation Commission. The Court is unaware of the legal basis for the payments made by the city on behalf of the seventh claimant, Officer Speers, whose case had apparently not been acted upon by the Commission at the time of trial.

West Haven also incurred legal expenses for its defense of the underlying claims before the Commission and in the present litigation.

6. West Haven contends that Liberty Mutual refused to defend it in the underlying Workmen's Compensation Commission hearings on the issue of the city's liability to the police officer claimants. Liberty Mutual admitted that it did not defend West Haven. Answer to Plaintiff's Request for Admissions, answer 2(N) (filed June 15, 1983; civ. no. N–82–570 (TFGD)); Answer to Plaintiff's Request for Admissions, answer 2(N) (filed June 6, 1984; civ. no. N–83–253 (TFGD)). Liberty Mutual claims, however, that West Haven never asked for a defense, and that West Haven chose to use its own counsel.

Since neither party offered evidence on this issue, the record does not disclose whether Liberty Mutual refused to defend or whether West Haven failed to ask for a defense, waived its right to a defense, or chose to use its own counsel. The Court cannot conclude that West Haven chose to use its own counsel merely because it was represented by its corporation counsel at the Commission hearings. Corporation counsel would also have represented West Haven if Liberty Mutual had refused to defend.

7. The Court finds that West Haven gave Liberty Mutual timely and sufficient notice of the Commission hearings. Liberty Mutual's witness, attorney Paul Flynn, testified that Liberty Mutual was represented at some of the Commission hearings by attorney Frank Moran and, after his death, by attorney Robert Moran; who is now also deceased. Liberty Mutual is a named party in the captions on at least four of the seven Commission awards. Receipt of the city's timely and sufficient notice by the company is evident from the correspondence between the city's assistant corporation counsel and both the insurance company and the insurance company counsel. Plaintiff's Exhibit 25, Defendant's Exhibits 508, 509. Perhaps most significantly, Liberty Mutual has raised no objection either to the timeliness or the sufficiency of the notice it received from West Haven.

8. Liberty Mutual has not reimbursed West Haven for any payment made to or on behalf of the police officers pursuant to the Commission awards.

9. The stipulations and awards in the underlying Commission hearings do not reveal whether the statutory basis of the awards is Ch. 113 or Ch. 568 or some combination of these two chapters. As stated above, all the claims filed with the Commission alleged at least one alternative theory of recovery in addition to Ch. 568. None of the awards contains an express statement of its statutory basis, although the awards and the incorporated stipulations do occasionally refer to Chapter 568 and to secs. 7–433a and 7–433c of Ch. 113.

10. No evidence was introduced at the trial by either party as to whether or not Liberty Mutual investigated the police officers' claims or attempted to settle them prior to the Commission awards. No evidence was introduced as to when Liberty Mutual first sought legal advice with respect to the claims.

## CONCLUSIONS OF LAW

### I. BREACH OF CONTRACT BY FAILURE TO INDEMNIFY UNDER COVERAGE A

■ West Haven first asks the Court to hold as a matter of law that the Commission awards were made pursuant to Ch. 568 and are therefore within the workmen's compensation part of the policy, Coverage A. West Haven argues that, even though each claim requested the benefits of both Chs. 113 and 568, no award states that it was made pursuant to either Ch. 113 or to a section of Ch. 113. The stipulations accompanying each claim contain references to the presence or absence of minor children, a fact which is relevant only to awards under Chapter 568. West Haven argues that the eligibility of the claimants for an award under sec. 7–433c does not preclude awards under Ch. 568, allowing the conclusion that the awards were made

pursuant to Ch. 568. Plaintiff's Post-Trial Memorandum at 24–5.

The Court is not persuaded by West Haven's arguments. The absence in the awards of any statement of their legal basis leaves open the possibility that the awards were made pursuant to either Ch. 113 or Ch. 568 or some combination of the two chapters. The presence in the stipulations of an item relevant only to Chapter 568 claims is easily explained because the stipulations were drafted before the awards were made, at a time when, presumably, the claimants were operating alternatively under several theories, each of which would justify an award.

West Haven cites *Bakelaar v. West Haven*, 193 Conn. 59, 475 A.2d 283 (1984), for the proposition that a claimant's eligibility for a sec. 7–433c award does not preclude his receiving an award under Ch. 568. The question in *Bakelaar*, however, was whether a qualified claimant could *elect* recovery under sec. 7–433c when his claim was potentially also compensable under Ch. 568. Section 7–433c grants compensation without requiring the claimant to prove, as he must under Ch. 568, that his disease or disability arose out of his employment. *Bakelaar* held that to require claimants to proceed under Ch. 568 if at all possible would be to engraft the Ch. 568 proof requirement upon sec. 7–433c contrary to the express intent of the Connecticut legislature. Although *Bakelaar* allows for a recovery under either section, the ruling does not advance plaintiff's contention that the Commission awards at issue here were made under Chapter 568.

■ Alternatively, West Haven argues that Liberty Mutual would be in breach of contract for failure to indemnify under Coverage A in those cases where the underlying claims alleged sec. 7–433a as a basis for recovery. West Haven argues that the Commission awards must have been made pursuant to Chapter 568 in those cases where the underlying claims alleged sec. 7–433a as a basis for recovery.

In *DuCharme v. Putnam*, 161 Conn. 135, 285 A.2d 318 (1971), the Connecticut Supreme Court struck down as unconstitutional Conn.Gen.Stat. sec. 7–433a, which raised a conclusive presumption that heart disease and hypertension in police officers is work-related for purposes of Ch. 568 awards. West Haven argues that the Supreme Court's action in *DuCharme* resurrected the previous version of sec. 7–433a, which had merely raised a rebuttable presumption that heart disease and hypertension in police officers is work-related. According to West Haven, the resurrected rebuttable presumption should lead this Court to hold as a matter of law that the Commission awards were made under Chapter 568, and that the awards are therefore within Coverage A.

The Court rejects plaintiff's argument that the rebuttable presumption version of section 7–433a was resurrected as a result of *DuCharme*. In *Bakelaar*, 193 Conn. at 67, 475 A.2d at 287, n. 6. West Haven raised the identical resurrection argument and the Connecticut Supreme Court rejected it. The Court follows the *Bakelaar* ruling and finds that the rebuttable presumption was not resurrected. Plaintiff is thus not entitled to the presumption that heart disease and hypertension in police officers is work-related, and therefore has failed to establish that the awards were made pursuant to Ch. 568, requiring indemnification under Coverage A.

In sum, the Court finds that plaintiff has failed to prove by a preponderance of the evidence that the awards were made pursuant to Ch. 568 and the Court finds plaintiff's theories of liability under Coverage A unpersuasive.

## II. BREACH OF CONTRACT BY FAILURE TO INDEMNIFY UNDER COVERAGE B

■ West Haven next argues that the company is in breach of contract because the payments made by the city pursuant to the Commission awards fall within Coverage B of the policy, where Liberty Mutual agreed to pay "all sums which the insured shall become *legally obligated* to pay as *damages* because of bodily injury by . . .

disease...." (emphasis added). West Haven argues that if the Commission awards were not made pursuant to Ch. 568 (either directly or through a sec. 7–433a presumption) then the awards must have been made pursuant to Ch. 113, sec. 7–433c. Because West Haven is "legally obligated" to pay the sec. 7–433c awards, West Haven contends that the awards fall under Coverage B. Coverage B contains an exclusion for "obligations [under] the workmen's compensation or occupational disease law." West Haven argues, however, that this exclusion is inapplicable because *Plainville v. Traveler's Indemnity Co.*, 178 Conn. 664, 425 A.2d 131 (1979), held that awards under sec. 7–433c are not benefits under the workmen's compensation or occupational disease law of Connecticut.

The city is correct in its contention that, according to *Plainville*, sec. 7–433c claims are not "occupational disease law" claims. Coverage B, however, is restricted to "damages" by the language of the policy, and awards under sec. 7–433c do not become "damages" just because West Haven is "legally obligated" to pay them. Instead of damages, sec. 7–433c awards " 'provid[e] special compensation, or even an outright bonus, to qualifying policemen and firemen.' *Grover v. Manchester*, 168 Conn. 84, 88, 357 A.2d 922," *as quoted in Plainville*, 178 Conn. at 674, 425 A.2d at 134.

Since 7–433c awards are not damages, they do not fall within Coverage B, and Liberty Mutual is not in breach of contract for failure to indemnify under Coverage B. The Court finds, therefore, that Liberty Mutual is not required to indemnify plaintiff under either Coverage A or Coverage B.

### III. BREACH OF CONTRACT BY FAILURE TO DEFEND

West Haven next argues that Liberty Mutual breached the policy contract by refusing to defend West Haven in the underlying workmen's compensation hearings. Liberty Mutual denies that it refused to defend, and alleges instead that West Haven chose to be represented by its own counsel.

When an insurance policy contains a defense provision like the one in the policy at issue here, it is well settled that the duty of the insurance company to defend the insured depends exclusively upon the allegations in the underlying complaint against the insured. If an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the insured. *Lee v. Aetna Casualty and Surety Co.*, 178 F.2d 750 (1949) (Hand, J.); *Schurgast v. Schumann*, 156 Conn. 471, 489, 242 A.2d 695, 704 (1968); *Missionaries of the Company of Mary, Inc. v. Aetna Casualty and Surety Co.*, 155 Conn. 104, 110, 230 A.2d 21, 24 (1967).

Liberty Mutual argues that the allegations in the Commission claims could not possibly fall within the policy coverage relying on the *Plainville* holding that sec. 7–433c awards are not part of the workmen's compensation or occupational disease law. This argument fails, however, because all of the claims in this case were filed with the Commission before *Plainville* was decided on August 21, 1979. Prior to the *Plainville* decision, the claims at issue here were unquestionably at least potentially within the policy coverage.

Liberty Mutual's argument also fails because the awards might not have been made under sec. 7–433c, and coverage for the awards might not have been affected in any way by *Plainville*.

Because the claims were unquestionably at least potentially within the policy coverage, Liberty Mutual came under a clear duty to defend West Haven at the time West Haven tendered notice of the claims pending before the Commission. Liberty Mutual has admitted that it did not defend West Haven.

West Haven having established a breach of contract, Liberty Mutual raises the affirmative defense that it was released from its duty to defend because West Haven allegedly chose to use its own counsel, and because West Haven allegedly failed to ask for a defense. There is no question that the burden of proof of these defenses rests

upon Liberty Mutual. "... [I]f the defendant relies upon the existence of some discharging factor, the burden of proceeding to establish it is on him—he must allege and offer respectable evidence of its existence." A. Corbin, *Contracts, one volume edition,* secs. 1228 at 979, 1238 at 993.

As discussed in the findings of fact, there is insufficient evidence in the record to ascertain whether, as a matter of fact, West Haven chose to use its own counsel. Liberty Mutual introduced no evidence whatsoever that West Haven had in fact released it from its commitment to defend. Accordingly, Liberty Mutual has not proven that it was in fact released by West Haven. The Court finds nothing in the record in this case to permit the conclusion that West Haven released Liberty Mutual from its commitment to defend.

Liberty Mutual alleges that West Haven failed to request a defense. Liberty Mutual, however, has not offered any argument showing why a failure explicitly to request a defense should deprive West Haven of the defense that Liberty Mutual was otherwise obligated to provide. For the following reasons, the Court finds that West Haven was not required to have expressly asked Liberty Mutual for a defense.

Initially, the policy contract itself contains no requirement that West Haven expressly ask Liberty Mutual to defend. The policy contains only the requirement that the insured immediately forward to the insurance company any notice or process which begins a suit or other proceeding brought against the insured. The Court has found that West Haven met this requirement by providing Liberty Mutual with timely and sufficient notice of the underlying workmen's compensation claims in this case. Finding of Fact No. 7, *supra,* at 6. The policy contains no additional condition precedent to Liberty Mutual's duty to defend.[1] Since West Haven fulfilled all its obligations under the terms of the policy, Liberty Mutual became obligat-

ed to defend West Haven upon receipt of West Haven's notice. Absent proof by Liberty Mutual of a release of its duty to defend West Haven, the only remaining element in West Haven's case for breach of contract is provided by Liberty Mutual's admission that it did not defend.

Because the policy is sufficient in and of itself to control the issue at bar, the Court declines to place the burden of proof that it asked for a defense upon West Haven. The Court will not add additional implied terms to a contract where the contract itself is clear.

Moreover, Connecticut law does not require that an insured ask for a defense. The Court is unaware of any Connecticut case holding that an insured must expressly ask for a defense in addition to satisfying the conditions precedent to receiving a defense under the applicable policy language.

In view of the absence of Connecticut case law on this issue, the Court has reviewed case law from other jurisdictions on the issue of whether an express request to defend is required. *Detroit Auto Inter-Insurance Exchange v. Higginbotham,* 95 Mich.App. 213, 290 N.W.2d 414 (1980) has been cited by Couch for the proposition that "[a]bsent a request for a defense, the insurer has no duty to defend." 14 Couch, *Insurance,* sec. 51:48 at 705. In addition to the fact that *Higginbotham* is not binding on the Court, the facts in *Higginbotham* clearly distinguish it from the case at bar.

In *Higginbotham,* an insured refused to sign a reservation of rights agreement so that the insurance company could defend him in a civil action. The court denied the insurance company's request for an order substituting for the reservation of rights agreement. The insurance company brought a declaratory action on its own behalf obtaining a determination that it was not liable under the policy. The Court of Appeals of Michigan found that the in-

---

1. The "no action" clause, which provides that no action shall lie against the insurance company unless the insured fulfills all of its obligations under the policy, does not impose any additional substantive duty upon the insured.

surance company's failure to defend did not result in liability for the default judgment entered in the underlying civil action because the defendant insured had not requested a defense.

*Higginbotham* is unlike the case at bar because the insurance company there asked for the reservation of rights order in the underlying action and filed the declaratory action. No further action by the insurance company could reasonably have been expected in the circumstances of that case (in the absence of a specific request to defend).

In *Hartford Accident and Indemnity Co. v. Gulf Insurance Co.*, 776 F.2d 1380 (7th Cir.1985) (*en banc*), the Seventh Circuit Court of Appeals considered the question of what is required to constitute adequate "tender" of defense by an insured. In *Gulf*, the City of Peoria and the Park District were sued as the result of an accident. Gulf insured the City and the Park District for certain perils, and was given due notice of the suit. Although Gulf defended the Park District, Gulf claimed that a provision of an agreement between the City and the Park District relieved Gulf of any liability under the policy on behalf of the city of Peoria. Peoria then asked its primary liability carrier, Hartford, to defend.

Ten months after the accident litigation began, Hartford's attorney wrote to Gulf in an attempt to transfer Peoria's defense to Gulf because one of the claims in the accident complaint potentially fell within Gulf's liability. Gulf refused to take over the defense from Hartford. The City of Peoria never attempted to transfer its defense to Gulf. Hartford settled and sued Gulf for refusing to defend, winning in the trial court. The Seventh Circuit reversed, using the following language:

> While we need not decide what the appropriate procedure for tender, if any, should be for unschooled laymen (who may be excused from any sort of active tender), clearly tender by a sophisticated city requires something more than a letter from a rival insurance company ten

months after the process of litigation has begun.

> Nor can the tender requirement be said to be satisfied because Gulf knew of the suit at the outset as the Park District's insurer. Mere knowledge that an insured is sued does not constitute tender of a claim. What is required is knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired. *See Solo Cup v. Federal Insurance Co.*, 619 F.2d 1178, 1183 (7th Cir.1980). An insurance company is not required to intermeddle officiously where its services have not been requested. *Cf. Oda v. Highway Insurance Co.*, 44 Ill. App.2d 235, 253, 194 N.E.2d 489, 499 (1963) (insurance company need not become "intermeddler in the contests of others").

*Gulf*, 776 F.2d at 1383.

*Gulf* held that an attempt by one insurance company to transfer the insured's defense to another insurance company was insufficient to activate the defense obligation in the second company's policy because adequate tender of defense requires "knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired." The Seventh Circuit found that Peoria's defense had not been adequately tendered to Gulf. Nevertheless, a careful reading of *Gulf* discloses no specific requirement that an insured must *expressly* request a defense in addition to giving notice of a claim brought against him. The instant case is distinguishable in that West Haven did not tender its defense to another insurance company besides Liberty Mutual or take similar action inconsistent with a desire to be defended by Liberty Mutual.

Absent special circumstances like the insured's refusal to sign a reservation of rights agreement in *Higginbotham* and the insured's voluntary tender of the defense to another insurance company as in *Gulf*, an insured's providing notice of a proceeding begun against him should be sufficient to indicate to the insurer that its assistance

is desired. Generally, the insured's giving notice of a proceeding begun against him will satisfy both of the *Gulf* criteria for adequate tender of a defense, because the insurance company will have knowledge of the suit and knowledge that the assistance of a defense from the insurance company is desired.

An insured pays part of his premium in consideration for the defense provision of his policy. "Liability insurance carries 'an aspect of 'litigation insurance.'" *Schulman Inv. Co. v. Olin Corp.*, 514 F.Supp. 572 (S.D.N.Y.1981), *quoting Spoor-Lasher Co. v. Aetna Cas. and Sur. Co.*, 39 N.Y.2d 875, 386 N.Y.S.2d 221, 352 N.E.2d 139 (1976). One of the basic purposes of the defense provision is protection of the insured from the expenses of litigation. *Solo Cup v. Federal Insurance Co.*, 619 F.2d 1178, 1185 (7th Cir.1980).

Any doubt remaining after the above analysis, should be resolved against Liberty Mutual: "... if there be an ambiguity in the language of the policy ... the canon *contra proferentum* must prevail...." *Lee*, 178 F.2d at 753.

## IV. RECOVERY IN TORT FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

 West Haven also contends that Liberty Mutual's conduct in this case rises to the level of a tort because Liberty Mutual allegedly failed to make a good faith investigation of the underlying claims, did not make a good faith effort to settle the officers' claims, and did not seek the advice of counsel before refusing to defend West Haven.

The State of Connecticut recognizes a tort cause of action against an insurance company for breach of an implied covenant of good faith and fair dealing. *Magnan v. Anaconda Indus., Inc.*, 193 Conn. 558, 566, 479 A.2d 781, 785 (1984). *See Doyle v. St. Paul Fire and Marine Ins. Co., Inc.*, 583 F.Supp. 554 (D.Conn.1984) (Dorsey, J.) (applying Connecticut law); *Grand Sheet Metal Products Company v. Protection Mutual Insurance Company*, 34 Conn.Supp. 46, 375 A.2d 428 (1977); *Gruenberg v. Aet-*

*na Ins. Co.*, 9 Cal.3d 566, 575, 108 Cal.Rptr. 480, 486, 510 P.2d 1032, 1038 (1973) ("... [I]n every insurance contract there is an implied covenant of good faith and fair dealing.").

Although West Haven discusses its claim for tortious breach of implied covenant of good faith and fair dealing in its memorandum, Plaintiff's Post-trial Memorandum, at 30, it introduced no evidence to support its tort claim. The Court therefore finds in favor of the defendant on these claims based on an insufficiency of evidence.

## V. DAMAGES

 Under Connecticut law, damages for breach of duty to defend in an insurance contract are the sum of any settlement or judgment, plus counsel fees in both the underlying action and the action for failure to defend, plus interest. *Missionaries of the Company of Mary, Inc. v. Aetna Casualty and Surety Co.*, 155 Conn. 104, 230 A.2d 21 (1967); *Schurgast v. Schumann*, 156 Conn. 471, 242 A.2d 695 (1968) (applying *Missionaries*).

The damages requested by West Haven do not take into account future payments by the city pursuant to the Workmen's Compensation Commission awards obtained by the claimants. F.R.Civ.P. Rule 54(c) requires that "... every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Accordingly, the Court directs that West Haven prepare and submit, on or before July 18, 1986, a revised computation of damages in these consolidated cases and a proposed judgment consistent with this opinion. Liberty Mutual shall file any objections to the revised computation of damages on or before August 1, 1986.

It is SO ORDERED.