LAURENCE R. & ARLINE P. GREEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JOSEPH E. & JUDITH T. GENTLE, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Green v. Commissioner
Docket Nos. 8162-93, 21166-93
United States Tax Court
T.C. Memo 1994-264; 1994 Tax Ct. Memo LEXIS 267; 67 T.C.M. (CCH) 3074; June 9, 1994, Filed Decision will be entered under Rule 155 in docket No. 8162-93.
Decision will be entered for respondent in docket No. 21166-93. *267 P1 and P2, a police officer and former firefighter, respectively, received payments under the Connecticut Heart and Hypertension Statute, Conn. Gen. Stat. Ann. sec. 7-433c (West 1989), a statute that provides special compensation to certain police officers and firefighters who develop (either on duty or off duty) heart disease or hypertension. Neither P1 nor P2 included these payments in his gross income for Federal income tax purposes. Held: The Connecticut Heart and Hypertension Statute, Conn. Gen. Stat. Ann. sec. 7-433c (West 1989), is not "a statute in the nature of a workmen's compensation act which provides compensation to employees for personal injuries or sickness incurred in the course of employment". Sec. 1.104-1(b), Income Tax Regs. Accordingly, payments received thereunder are not excluded from the gross incomes of P1 and P2 under sec. 104(a)(1), I.R.C.
For petitioners: Jonathan J. Klein and Samuel L. Braunstein. For respondent: Carmino J. Santaniello. LARO
LARO
MEMORANDUM FINDINGS OF FACT AND OPINION LARO, Judge: This is the lead case in respondent's Heart and Hypertension Benefits Litigation Project. [1] Petitioners herein -- Laurence R. and Arline P. Green, *268 and Joseph E. and Judith T. Gentle -- petitioned the Court for redetermination of respondent's determinations reflected in notices of deficiency issued on March 10, 1993 (to the Greens), and August 30, 1993 (to the Gentles). The Court ordered these two cases consolidated for purposes of trial, briefing, and opinion. Respondent's notices of deficiency listed the following deficiencies in Federal income taxes: Laurence R. and Arline P. Green:
1989
$  3,910
1990
4,435
Joseph E. and Judith T. Gentle:
1990
15,390
Following a concession by respondent, the sole issue for decision is whether the payments received by Laurence R. Green and Joseph E. Gentle under Conn. Gen. Stat. Ann. section 7-433c (West 1989), are excludable from gross income under section 104(a)(1). The answer depends on whether these payments were received "under a statute in the nature of a workmen's compensation act which provides compensation to *269 employees for personal injuries or sickness incurred in the course of employment." [2] See sec. 1.104-1(b), Income Tax Regs. As discussed herein, we hold that these payments were not received under such a statute. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the taxable years in issue. [3] Rule references are to the Tax Court Rules of Practice and Procedure. Conn. Gen. Stat. Ann. sec. 7-433c (West 1989), is referred to as the Connecticut Heart and Hypertension Statute. Payments received under the Connecticut Heart and Hypertension Statute are referred to as section 7-433c payments. The term "petitioners" refers collectively to Laurence R. Green and Joseph E. Gentle. *270 FINDINGS OF FACT General
Some of the facts have been stipulated and are so found. The stipulations and attached exhibits are incorporated herein by this reference. Each petitioner resided in Connecticut at the time that he or she filed a petition in this case. For the taxable years in issue, each petitioner filed a Form 1040, U.S. Individual Income Tax Return, using the filing status of "Married filing joint return". Laurence R. Green
On September 1, 1963, petitioner Laurence R. Green (Green) began working as a firefighter for the City of Torrington, Connecticut (Torrington). Green underwent a mandatory physical examination on entry into this service; the examination did not detect any evidence of heart disease or hypertension. In 1974 and 1977, Green was diagnosed with hypertension and coronary artery disease, respectively. On October 16, 1979, Green suffered a heart attack that prevented him from continuing his work as a firefighter. In 1979, Green filed a claim for section 7-433c payments. On January 9, 1980, Torrington placed Green on a full medical pension, effective January 13, 1980, and Green retired as a member of the Torrington Fire Department on *271 this latter date. Since January 13, 1980, Green's medical pension has provided monthly payments of $ 603.32; the municipal ordinance under which Green received these payments entitled him to an annual pension equal to 50 percent of his annual compensation on the date of his retirement. In addition to the monthly pension payments under the municipal ordinance, Green began receiving section 7-433c payments in 1980. With respect to the years in issue, Green received section 7-433c payments as follows: 1989
1990
Firefighters' salary at that time
[1]
$ 26,042.84
[1]
$ 29,553.84
Less: Monthly pension
[2]
7,239.84
[2]
7,239.84
Section 7-433c payments
$ 18,803.00
$ 22,314.00
Green included neither the monthly pension nor the section 7-433c payments in his 1989 or 1990 gross income. Respondent determined that Green should have included both of these payments in his income for those years. Respondent later conceded that the monthly pension was not taxable *272 to Green. Joseph E. Gentle
On January 15, 1969, petitioner Joseph E. Gentle (Gentle) began working as a police officer for the City of Stamford, Connecticut (Stamford). Gentle underwent a mandatory physical examination on entry into this service; the examination did not detect any evidence of heart disease or hypertension. Gentle was diagnosed with high blood pressure in 1977. Gentle later suffered a minor stroke caused by a blood clot on December 5, 1979, that caused him to miss approximately 6 weeks of work. Upon returning to work, on January 16, 1980, Gentle was assigned to light duty in the Stamford Police Department's record room. Approximately 6 months later, Gentle was reassigned to street duty, and, shortly thereafter, reassigned to the night shift as a "jailer". [4] Gentle's duties as a "jailer" consisted of booking suspects and monitoring those suspects who were in custody. Gentle filed a claim for section 7-433c *273 payments in 1980. During the year in issue, Gentle received section 7-433c payments totaling $ 49,520.10. Gentle also received $ 60,484 in wages from Stamford, and earned $ 22,984 in self-employment income by directing traffic on behalf of third parties. Gentle did not include in his 1990 gross income any portion of the section 7-433c payments received during that year. Respondent determined that Gentle should have included the section 7-433c payments in his income for that year. Connecticut Workmen's Compensation Commission
The Connecticut Workmen's Compensation Commission (Commission) administers all claims filed under either the Connecticut Workmen's Compensation Act (Act) or the Connecticut Heart and Hypertension Statute. All amounts payable to a claimant under the Act are available to a claimant under the Connecticut Heart and Hypertension Statute. Police officers and firefighters who suffer from heart disease and/or hypertension may sequentially or simultaneously file claims for benefits under the Act and the Connecticut Heart and Hypertension Statute. The administrative procedures are generally the same for filings under the Act and filings under the Connecticut *274 Heart and Hypertension Statute. Employees initiate claims for benefits under each of these provisions by filing a notice of injury with the Commission and the claimant's employer. The employee and employer then agree or disagree that the employee is entitled to benefits. If the employer disagrees with the employee, an informal hearing to resolve the disagreement is scheduled before the Commission. In the event that this informal hearing fails to resolve the disagreement, a Commissioner of the Commission holds a formal evidentiary hearing. That Commissioner then issues a written opinion in which he or she upholds or denies the employee's claim for benefits. A claimant is not required to establish a causal connection between his or her employment and his or her heart disease or hypertension, in order to recover section 7-433 payments. An award of section 7-433c payments is made if a claimant establishes by a preponderance of the evidence that he or she: (1) Is a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department; (2) underwent a physical at the time of commencing employment which did not disclose any evidence of heart *275 disease or hypertension; [5] and (3) developed (either on duty or off duty) heart disease or hypertension resulting in disability. Employers may contest a claimant's allegation that he or she has met these three prongs. [6]
*276 OPINION The Connecticut General Assembly has chosen to provide special compensation to, and in recognition of, the men and women who serve in the police and fire forces of its State. See the preamble to the Connecticut Heart and Hypertension Statute; [7] see also Grover v. Town of Manchester, 357 A.2d 922, 924 (Conn. 1975). We agree with the Connecticut General Assembly that police officers and firefighters are vital to our society. We are mindful of the gratitude that society owes to police officers and firefighters who confront considerable peril and frequent risks to protect the safety of the public. Courts, however, are not legislators who can recognize valuable service with largess. We cannot write or rewrite the law to accomplish the objectives of pleasing this group or that. Rather we must be cognizant that our duty is to interpret the law as written by the legislators, and to apply this law in an evenhanded manner regardless of the quality or characterization that otherwise attaches to the facts of a particular case. *277 The question for our decision is whether the payments that Green and Gentle received pursuant to the Connecticut statute during the years in issue are excluded from their gross income by section 104(a)(1), which provides that gross income does not include "amounts received under workmen's compensation acts as compensation for personal injuries or sickness". Exclusions from gross income are construed narrowly to effectuate the Congress' general intent to tax any accession to wealth. United States v. Centennial Sav. Bank FSB, 499 U.S. 573, 583-584 (1991); Commissioner v. Jacobson, 336 U.S. 28, 48-49 (1949). We bear that principle in mind in deciding whether the payments to petitioners fall within the exclusion of section 104(a)(1), as interpreted by section 1.104-1(b), Income Tax Regs.
Section 1.104-1(b), Income Tax Regs., encompasses not only "amounts which are received by an employee under a workmen's compensation act", but also amounts received by an employee "under a statute in the nature of a workmen's compensation act which provides compensation to employees for personal injuries or sickness incurred in the course *278 of employment" (emphasis added). [8] Accordingly, we focus on whether the Connecticut Heart and Hypertension Statute is "a statute in the nature of a workmen's compensation act which provides compensation to employees for personal injuries or sickness incurred in the course of employment". Sec. 1.104-1(b), Income Tax Regs; see also Take v. Commissioner, 82 T.C. 630, 636 n.15 (1984), affd. 804 F.2d 553 (9th Cir. 1986); Givens v. Commissioner, 90 T.C. 1145, 1151-1152 (1988). *279 The Connecticut Heart and Hypertension Statute, which was enacted in 1971 in response to the opinion of the Connecticut Supreme Court in Ducharme v. Town of Putnam, 285 A.2d 318 (Conn. 1971), [9] provides in pertinent part: *282 Notwithstanding any provision of * * * [the Connecticut Workmen's Compensation Act] or any other general statute, chapter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under * * * [the Connecticut Workmen's Compensation Act] if such death or disability was caused by a personal injury which *280 arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of * * * [the Connecticut Workmen's Compensation Act] or the municipal or state retirement system under which he is covered, except as provided by this section, *281 as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. * * * [Conn. Gen. Stat. Ann. sec. 7-433c (West 1989); emphasis added.] [10]
*283 Following our careful review of the Connecticut Heart and Hypertension Statute, we conclude that payments made thereunder do not qualify for the exclusion from gross income under section 1.104-1(b), Income Tax Regs. Simply stated, the Connecticut Heart and Hypertension Statute is not within the breadth of section 1.104-1(b), Income Tax Regs., because it allows payments to be made for other than work-related injuries. Rutter v. Commissioner, 760 F.2d 466, 468 (2d Cir. 1985) ("Unless a statute contains some provision restricting the payment of benefits to cases of work-related disabilities, it is not in the nature of a workmen's compensation statute"), affg. per curiam T.C. Memo. 1984-525; Take v. Commissioner, 82 T.C. at 634 ("A statute is in the nature of a workmen's compensation act only if it allows disability payments solely for service-related personal injury or sickness"); Haar v. Commissioner, 78 T.C. 864, 868 (1982) ("A statute will not be considered akin to a workers' compensation act if it allows for disability payments for any reason other than on-the-job *284 injuries"), affd. per curiam 709 F.2d 1206 (8th Cir. 1983); Dyer v. Commissioner, 71 T.C. 560, 562 (1979) ("whether a payment is in the nature of workmen's compensation depends upon whether the payment is made because of injuries sustained in the line of duty"); see also Givens v. Commissioner, supra at 1151-1152; Robinson v. Commissioner, 42 T.C. 403, 407-408 (1964); Kane v. United States, 28 Fed. Cl. 10 (1993); Riley v. United States, 140 Ct. Cl. 381, 156 F. Supp. 751, 752 (1957); Smelley v. United States, 806 F. Supp. 932, 935 (N.D. Ala. 1992), affd. per curiam 3 F.3d 389 (11th Cir. 1993); sec. 1.104-1(b), Income Tax Regs. Indeed, the Connecticut Heart and Hypertension Statute allows the payment of benefits to police officers or firefighters who suffer heart disease or hypertension, regardless of the cause of illness. We find critical the fact that a claimant is entitled to section 7-433c payments under the Connecticut Heart and Hypertension Statute *285 even when his or her heart disease or hypertension arose from off-duty activity. See, e.g., Haar v. Commissioner, supra (Civil Service Retirement Act was not a statute in the nature of a workmen's compensation act because it provided for disability payments for injury or sickness that occurred either on duty or off duty). In other words, a claimant may receive section 7-433c payments after becoming incapacitated from heart disease or hypertension that was completely unrelated to the claimant's employment as a police officer or firefighter. We also find critical the fact that the Connecticut Heart and Hypertension Statute does not require a causal connection between the claimant's employment and his or her heart disease or hypertension. In this regard, a claimant automatically receives section 7-433c payments if the claimant meets the three-pronged test mentioned above, Felia v. Town of Westport, 571 A.2d 89, 91 (Conn. 1990); Town of Plainville v. Travelers Indem. Co., 425 A.2d 131, 134 (Conn. 1979), and a municipality may not challenge the claimant's entitlement to section 7-433c payments *286 on the ground that the disability was not work-related. See, e.g., Take v. Commissioner, 82 T.C. 630, 634 (1984), affd. 804 F.2d 553 (9th Cir. 1986). This absence of a causal connection serves to create an irrebuttable presumption that all heart diseases and hypertension suffered by a police officer or firefighter are work-related, and serves to equate the Connecticut Heart and Hypertension Statute with other provisions that this and other courts have previously considered, and which we have concluded were outside of the reach of section 1.104-1(b), Income Tax Regs. For example, in Take v. Commissioner, supra, we held that disability payments were not excludable under an Alaskan city ordinance that entitled police officers and firefighters to disability pensions. As is similar to the Connecticut Heart and Hypertension Statute, the Alaskan ordinance created an irrebuttable presumption that heart, lung, and respiratory illnesses were occupationally related. In holding that the Alaskan ordinance was not in the nature of a workmen's compensation act under section 1.104-1(b), Income Tax Regs., we concluded that the *287 irrebuttable presumption served to allow the payment of disability benefits for other than work-related disabilities. Take v. Commissioner, 82 T.C. at 636. Although our opinion in Take (and our decision today) did not foreclose the possibility that section 104(a)(1) could apply to a provision containing an irrebuttable presumption that certain injuries are work-related, a definitive causal relationship must be shown to exist between the occupation and the injury in order for such a provision to be in the nature of a workman's compensation act. Take v. Commissioner, 82 T.C. at 636 n.14. In this regard, the Commissioner has ruled that benefits received for pneumoconiosis (black lung disease) under title IV of the Federal Coal Mine Health and Safety Act of 1969, Pub. L. 91-173, 83 Stat. 742, as amended by the Black Lung Benefits Act of 1972 (1972 Act), Pub. L. 92-303, 86 Stat. 150, are excludable from gross income under section 104(a)(1); the 1972 Act, as amended, generally provides an irrebuttable presumption that death or disabilities from pneumoconiosis are occupationally related. See Rev. Rul. 72-400, 1972-2 C.B. 75. *288 In contrast to the obvious causal relationship between the occupation of coal mining and black lung disease, however, the record in the instant case does not establish a definitive causal relationship between petitioners' occupations and their illnesses.[11] Although the preamble to the Connecticut Heart and Hypertension Statute, supra note 7, could be construed to be a "legislative recognition" that police officers and firefighters are exposed to an exceptionally high risk of heart disease or hypertension, such a legislative recognition cannot substitute for the requisite medical evidence that is necessary to establish a definitive causal relationship. Indeed, as observed by the Connecticut Supreme Court in refusing to recognize the preamble as a "legislative finding" of a causal relationship, other language in the preamble equally reveals the Connecticut General Assembly's recognition that the enactment of the Connecticut Heart and Hypertension Statute would aid in the recruitment and hiring of police officers and firefighters, and would advance public interest and welfare through the provision of effective police and fire services. Town of Plainville v. Travelers Indem. Co., supra at 135-136. *289 Smelley v. United States, 806 F. Supp. 932 (N.D. Ala. 1992), affd. per curiam 3 F.3d 389 (11th Cir. 1993), is another case on point. The State statute involved there was similar to the Connecticut Heart and Hypertension *290 Statute, and to the ordinance in Take v. Commissioner, supra, in that benefits were not restricted to work-related disabilities.[12] Consistent with our holding today, the district court concluded that the statute in Smelley was not in the nature of a workmen's compensation act for purposes of section 1.104-1(b), Income Tax Regs., because it did not require the taxpayer to establish that his hypertension was work-related. Smelley v. United States, supra at 935. *291 The possibility that a claimant may receive section 7-433c payments on account of a work-related injury does not affect our holding today; the fact that a claimant was injured in the line of duty is irrelevant to an inquiry under section 1.104-1(b), Income Tax Regs., if the statute under consideration fails to restrict benefits to work-related injuries. Rutter v. Commissioner, 760 F.2d 466, 468 (2d Cir. 1985), affg. T.C. Memo. 1984-525; see also Curmon v. Commissioner, T.C. Memo. 1991-432 (amounts received by firefighter injured in the line of duty were not within the exclusion under section 1.104-1(b), Income Tax Regs., because the benefits were payable irrespective of whether the injury had been incurred in the line of duty). The proper focus for an inquiry into whether a statute is "in the nature of a workmen's compensation act" is on the nature of the statute; the source or nature of the injury in a particular case is irrelevant to this inquiry. Take v. Commissioner, 804 F.2d 553, 558 (9th Cir. 1986), affg. 82 T.C. 630 (1984) *292 and T.C. Memo. 1985-388; Rutter v. Commissioner, supra at 468. Once it is determined that a statute does not distinguish between work-related and other types of injuries, the inquiry is over; the payments received thereunder are not excludable from gross income under section 1.104-1(b), Income Tax Regs.Take v. Commissioner, 804 F.2d at 558. The opinion of the Court of Appeals for the Second Circuit in Rutter v. Commissioner, supra, exemplifies this point; the Second Circuit is the circuit to which an appeal in this case would lie. Sec. 7482(b)(1)(A). In Rutter v. Commissioner, supra at 467, the Court of Appeals for the Second Circuit was confronted with the sole issue of whether sick leave received by a taxpayer/police officer on account of an injury sustained in the line of duty was excludable from his gross income under section 104(a)(1). In answering this question in the negative, the court found "unavailing" the taxpayer's argument that his payments qualified for exclusion because they were in fact the result *293 of a work-related injury. Id. at 468. In so doing, the court emphasized: In determining whether such payments are excludable from gross income, * * * [sec. 1.104-1(b), Income Tax Regs.,] charges us to look to the nature of the statute, rather than the source of the injury, and a statute that does not distinguish between work-related injuries and other types of injuries is not "in the nature of a workmen's compensation statute". [Rutter v. Commissioner, 760 F.2d at 468.]
Petitioners' arguments for a result contrary to our holding today center on their allegation that police officers and firefighters are "in the course of employment" 24 hours per day. In this regard, petitioners contend, police officers and firefighters are continually required to be available and ready for active duty when an emergency arises. Accordingly, petitioners conclude, any injury to a police officer or firefighter is work-related regardless of whether the injury occurs on duty or off duty. Petitioners also argue that the term "in the course of employment" in section 1.104-1(b), Income Tax Regs., does not require that the injury or *294 sickness arise out of the employment. Simply stated, petitioners contend, the term merely requires that the injury occurs between the time that the claimant commences his or her employment for a given employer, and the time that he or she terminates that employment. In petitioners' minds, therefore, an injury that is caused to a police officer or firefighter is outside the realm of section 1.104-1(b), Income Tax Regs., only when the injury occurs before the claimant begins his or her career as a police officer or firefighter, or after he or she terminates that career. Although petitioners' arguments are creative, they are unpersuasive.[13] Notwithstanding that some conscientious professionals, including many police officers and firefighters, may become so involved in their work that their personal and professional lives coalesce, we are unable to conclude that these people are continually in the course of employment from the time that they commence employment until the time that they terminate it. Accord Golden v. Commissioner, T.C. Memo. 1971-162 (Court rejected a similar argument made by a retired municipal judge). We have crossed this bridge before *295 with other police officer/taxpayers who have appeared before us and argued for preferential treatment on account of the requirements of their profession. For example, in McCabe v. Commissioner, 76 T.C. 876 (1981), affd. 688 F.2d 102 (2d Cir. 1982), the taxpayer was a New York City police officer who was required to carry his revolver at all times while in New York City. The taxpayer was required to travel to his place of duty by using a circuitous route through New York, rather then by using a shorter path through New Jersey, because the laws of New Jersey generally prohibited him from carrying his revolver in that State. Id. at 877-879. In this court, the taxpayer argued that he should be able to deduct the difference between the amount that he spent to drive the circuitous route, and the amount that he would have spent had he been able to travel the shorter route. In disagreeing with the taxpayer, we held that he had failed to establish that his transportation expenses were directly connected with the pursuit of his employer's business. Id. at 880-881. *296 The long and short of petitioners' arguments are that they are seeking a broad interpretation of the exclusionary term "in the course of employment". Following the rules of statutory construction mentioned above, we refuse to give that term such a broad interpretation. [14] As stated by the Supreme Court, "Exemptions from taxation do not rest upon implication." [15]United States Trust Co. v. Helvering, 307 U.S. 57, 60 (1939) (fn. ref. omitted).
*297 We have considered all other arguments made by petitioners and find them to be without merit. To reflect the concession by respondent, Decision will be entered under Rule 155 in docket No. 8162-93.
Decision will be entered for respondent in docket No. 21166-93. Footnotes
1. Petitioners in 71 other dockets have agreed to be bound by the outcome of this case.↩
2. We employ the term "workmen's compensation" because it is used in sec. 1.104-1(b), Income Tax Regs.↩, rather than the gender-neutral term "worker's compensation".
3. As indicated above, the taxable years in issue are 1989 and 1990 in the case of Laurence R. Green, and 1990 in the case of Joseph E. Gentle.↩
1. Amount of compensation paid in those years to members of the Torrington Fire Department that held the same position that Green held on the date of his retirement.↩
2. $ 603.32 per month x 12 months = $ 7,239.84↩
4. Gentle is currently employed with the Stamford Police Department as a "jailer".↩
5. A claimant need not prove this second prong if successful passage of a physical examination was a prerequisite to employment. See the Connecticut Heart and Hypertension Statute.↩
6. For example, an employer may challenge a claimant's allegation that he or she is a regular member of a paid municipal police department. See, e.g., Bucko v. City of New London, 537 A.2d 1045 (Conn. Ct. App. 1988). Likewise, an employer may challenge a claimant's allegation that his or her physical failed to reveal any evidence of heart disease or hypertension. See, e.g., Suprenant v. City of New Britain, 611 A.2d 941 (Conn. Ct. App. 1992); see also Cooper v. Town of Seymour, 11 Conn. Workers' Comp. Rev. Op. 274 (Nov. 19, 1993) (although police officer had passed a physical, and the examining physician had concluded that the examination did not reveal any evidence of heart disease or hypertension, the Connecticut Compensation Review Board denied claim for sec. 7-433c↩ payments because a blood pressure measurement of 146/88 obtained during the examination constituted evidence of hypertension).
7. The preamble to the Connecticut Heart and Hypertension Statute provides: In recognition of the peculiar problems of uniformed members of paid fire departments and regular members of paid police departments, and in recognition of the unusual risks attendant upon these occupations, including an unusual high degree of susceptibility to heart disease and hypertension, and in recognition that the enactment of a statute which protects such fire department and police department members against economic loss resulting from disability or death caused by hypertension or heart disease would act as an inducement in attracting and securing persons for such employment, and in recognition, that the public interest and welfare will be promoted by providing such protection for such fire department and police department members, municipal employers shall provide compensation as follows: * * *.↩
8. In light of the regulation, we do not regard it as dispositive that the Connecticut Heart and Hypertension Statute is not part of the Connecticut Workmen's Compensation Act, Bakelaar v. City of West Haven, 475 A.2d 283, 287 (Conn. 1984) (Connecticut Heart and Hypertension Statute constitutes legislation "separate and distinct" from the Act); Collins v. City of West Haven, 555 A.2d 981, 984 (Conn. 1989) (Connecticut Heart and Hypertension Statute and the Act are "separate pieces of legislation"), and is simply "special compensation, or even an outright bonus, to qualifying policemen and firemen", Grover v. Town of Manchester, 357 A.2d 922, 924 (Conn. 1975). Murphy v. Commissioner, 20 T.C. 746, 748 (1953). Nor is it dispositive that the procedure for obtaining sec. 7-433c payments, and the amount of those payments, are the same as under the Act. As stated by the Connecticut Supreme Court, the legislature saw fit to limit the "procedural avenue" for bringing claims under * * * [the Connecticut Heart and Hypertension Statute] to that already existing under * * * [the Act] rather than require the duplication of the administrative machinery available under the workmen's compensation act and further burden the courts and the municipalities with additional litigation from claims by firemen and policemen pursuant to this legislation * * *. [Town of Plainville v. Travelers Indemnity Co., 425 A.2d 131, 135↩ (Conn. 1979).]
9. In Ducharme v. Town of Putnam, 285 A.2d 318, 319, 322 (Conn. 1971), the court held unconstitutional Conn. Gen. Stat. Ann. sec. 7-433a (West 1989), the predecessor of the Connecticut Heart and Hypertension Statute, that contained a conclusive presumption in the adjudication of workmen's compensation cases that a claimant's heart disease or hypertension arose out of his or her employment. See also Grover v. Town of Manchester, 357 A.2d 922, 923-924 (Conn. 1975). In commenting on the reason for the enactment of the Connecticut Heart and Hypertension Statute, the Connecticut Supreme Court stated: "our legislature promptly acted to do what this court could not and refused to do in Ducharme and rewrote the statute by simply providing special compensation, or even an outright bonus, to qualifying policemen and firemen." Grover v. Town of Manchester, supra↩ at 924.
10. The Connecticut Heart and Hypertension Statute exemplifies other provisions that have been enacted throughout the country to give special compensation to police officers and firefighters who have suffered respiratory and heart diseases. 1B Larson, Workmen's Compensation Law, sec. 41.72 (1993). Compensating police officers and firefighters who suffer from these diseases is problematic under typical workmen's compensation statutes, given the nearly insurmountable hurdle that claimants must overcome in order to prove that their respiratory and heart diseases arose from their employment and occurred in the course of their employment. McNamara v. Town of Hamden, 398 A.2d 1161, 1163 (Conn. 1978); 1B Larson, supra at 41.72; see also Take v. Commissioner, 804 F.2d 553, 557 (9th Cir. 1986), affg. 82 T.C. 630 (1984) and T.C. Memo. 1985-388. In order to mitigate this hurdle, many State legislatures have enacted presumptions (of varying strengths) that respiratory and heart diseases suffered by police officers or firefighters arose from their employment and occurred in the course of their employment. 1B Larson, supra at 41.72; see also Take v. Commissioner, supra↩ at 557.
11. Unlike black lung disease, heart disease and hypertension are prevalent in the general population, and have not been confined to a certain occupational group. See, e.g., Take v. Commissioner, 82 T.C. 630, 636 (1984), affd. 804 F.2d 553↩ (9th Cir. 1986). Indeed, a number of factors, such as age, heredity, diet, high cholesterol, obesity, diabetes, high salt intake, tobacco use, excessive alcohol consumption, emotional stress, physical stress, lack of exercise, and excessive heat, are recognized as contributors to the development of heart disease and hypertension. See generally 6 New Encylopaedia Britannica 202 (15th ed. 1993); McNiece, Heart Disease and the Law xiii-xiv, 39-43 (1961).
12. Specifically, the State statute provided in relevant part: If a * * * state trooper who qualifies for benefits under the provisions of this article suffers disability as a result of * * * [any condition or impairment of health caused by hypertension, heart disease or respiratory disease, see Ala. Code sec. 36-30-20 (1975)], his disability shall be compensable the same as any service-connected disability under any law which provides benefits for policemen of such municipality, or, if a state trooper, under the state employees' retirement system, the same as if injured in the line of duty * * * provided, that this article shall not apply to any municipality which has elected to be covered by the workmen's compensation laws of this state. [Ala. Code sec. 36-30-21↩ (1975).]
13. In support of their arguments, petitioners generally rely on the testimony of a police officer and a firefighter, and on the manuals of Rules and Regulations of the Stamford Police Department and the Torrington Fire Department. We find this testimony self-serving, and the manuals unconvincing. As a point of fact, the police manual explicitly permits members of the Stamford police force to engage in outside employment and private business. See par. 4.6 of the Manual of Rules and Regulations, Stamford Police Department, at 20 (1981).↩
14. Indeed, the Connecticut General Assembly has statutorily rejected an analogous argument in the context of claims filed under the State's Workmen's Compensation Act. See Conn. Gen. Stat. Ann. sec. 31-275(1)(A)↩ (West Supp. 1994) (in the cases of police officers and firefighters, the term "arising out of and in the course of his employment" encompasses "his departure from his place of abode to duty, his duty, and his return to his place of abode after duty").
15. We note that the Congress passed legislation that would have amended sec. 104(a)(1) to exclude sec. 7-433c payments from a recipient's gross income. See sec. 7403 of the Revenue Act of 1992, H. Rept. 102-1034, at 429 (1992). This legislation, however, was vetoed by the President of the United States on Nov. 4, 1992. Memorandum of Disproval for the Revenue Act of 1992, 28 Weekly Comp. Pres. Doc. 2283 (Nov. 9, 1992). We give no weight to the Congress' unsuccessful attempt to amend sec. 104(a)(1)↩.