ROSEMARY MCNULTY *v.* CITY OF STAMFORD ET AL.
(13290)

FOTI, LAVERY and HEIMAN, Js.

Argued February 6—decision released May 16, 1995

*Taka Iwashita,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant attorney general, for the appellant (defendant Second Injury Fund).

*Kristin Dorney Foley,* for the appellee (plaintiff).

*Booth M. Kelly, Jr.,* for the appellee (named defendant).

LAVERY, J. The sole issue in this appeal is whether the second injury fund is liable to municipalities for payment under the heart and hypertension statute, General Statutes § 7-433c, in the same manner as it is liable for workers' compensation claims. The compensation review board (board) answered in the affirmative. We disagree.

The pertinent facts are as follows. On June 29, 1977, Edward McNulty (decedent), then a member of the

police department of the city of Stamford, was found to be suffering from heart disease compensable under the provisions of General Statutes § 7-433c. He sustained a 20 percent permanent partial disability to his heart, entitling him to a specific award of 195 weeks of compensation at his basic weekly compensation rate of $135.

The decedent died on February 4, 1991, from cardiac arrest due to arteriosclerotic heart disease, leaving a widow and dependent child. During his lifetime, the decedent received no temporary total or temporary partial disability benefits. He did receive the specific award of 195 weeks of compensation for the 20 percent permanent partial impairment to his heart and twenty-five weeks of compensation for permanent and significant scarring from surgery required for treatment of his compensable heart disease.

On April 12, 1991, the decedent's estate and the city of Stamford stipulated to a finding and an award that was approved by the commissioner. The award provided for "four thousand dollars for funeral expenses, dependent spouse benefits until remarriage or death and benefits for the dependent child until he reaches 18 or as otherwise provided under § 31-306."

On October 29, 1991, pursuant to a motion to modify the finding and the award, the commissioner found that the plaintiff was entitled to cost of living adjustments, to come into effect on and after October 1, 1991, to be paid by the employer and reimbursed from the second injury fund, that the plaintiff was to reimburse the employer for its payment to her of the $4000 funeral expense, and that the waiting period provided in General Statutes (Rev. to 1977) § 31-306 (i) was applicable. This finding meant that the plaintiff was not entitled to compensation until the expiration of 220 weeks, representing the number of weeks of benefits received by the decedent during his lifetime.

On appeal, the board held that the plaintiff was entitled to cost of living adjustments from the date of injury to be paid by the city of Stamford, and reimbursed by the fund. Also, pursuant to the then newly enacted Public Acts 1992, No. 92-31, the plaintiff was found to be entitled to a $4000 funeral expense payment and compensation benefits retroactive to the date of death, notwithstanding any offset period, to be paid by the municipal employer and reimbursed by the fund. The fund appeals this decision on the sole issue of reimbursement to the employer.

The history of the second injury fund; see *Civardi* v. *Norwich,* 231 Conn. 287, 649 A.2d 523 (1994); and of the heart and hypertension law; see *Morgan* v. *East Haven,* 208 Conn. 576, 546 A.2d 243 (1988); has been set forth on many occasions by our Supreme Court and does not require repetition.

"Payment of an award from a special fund such as the second injury and compensation assurance fund, which was established, inter alia, to assist in the payment of compensation awarded to handicapped and disadvantaged workers; General Statutes §§ 31-349 [through] 31-355; see *Everett* v. *Ingraham,* 150 Conn. 153, 158, 186 A.2d 798 [1962]; should be made only in accordance with express statutory authority; 101 C.J.S., Workmen's Compensation, § 837 [1958]; in order to protect that special fund and prevent unwarranted diversions of it from the specific purpose for which it was created." *Going* v. *Cromwell Fire District,* 159 Conn. 53, 61, 267 A.2d 428 (1970). The absence of any such express statutory authority therefore undermines the claim that the fund must assume liability.

One purpose of amendments to the heart and hypertension law, according to our Supreme Court, is to avoid prior constitutional difficulties. The legislature

did not include the benefits available under § 7-433c as compensation under the workers' compensation scheme, chapter 568. Rather, the current provision is separate and distinct from chapter 568. *Bakelaar* v. *West Haven*, 193 Conn. 59, 67, 475 A.2d 283 (1984). It provides "an outright bonus" to those police and fire personnel who qualify and, thus, is not a taking of property without due process of law. *Grover* v. *Manchester*, 168 Conn. 84, 88, 357 A.2d 922, appeal dismissed, 423 U.S. 805, 96 S. Ct. 14, 46 L. Ed. 2d 26 (1975). Chapter 568 is used only as a "procedural avenue" for administration of the benefits under § 7-433c so that a duplicate procedure did not have to be created. *Bakelaar* v. *West Haven*, supra, 68, citing *Plainville* v. *Travelers Indemnity Co.*, 178 Conn. 664, 671–72, 425 A.2d 131 (1979); see *Morgan* v. *East Haven*, supra, 208 Conn. 581.

General Statutes § 31-345[1] specifies the situations in which the fund will be liable and does not include reim-

[1] General Statutes § 31-345 provides: "(a) No insurer or employer to whom a certificate of solvency pursuant to subsection (b) of section 31-284 has been issued, shall issue any policy of insurance purporting to cover the liability of an employer under the provisions of this chapter until a copy of the form of such policy has been filed with and approved by the insurance commissioner. No insurer or employer who is self-insured in whole or in part shall engage in writing insurance under this chapter or providing the compensation and benefits directly to employees unless he files with the insurance commissioner a receipt from the state treasurer or the comptroller on or before the first day of October, that the employer has paid his pro rata cost of administration required by this section or if the self-insured employer has not, prior to July first of any year, provided compensation and benefits under this chapter, the self-insured employer shall file such receipt on or before October first, annually that he has paid an amount equal to one-quarter of one per cent of the self-insured employer's payroll for the twelve months immediately preceding such July first.

"(b) (1) When, after the close of a fiscal year ending prior to July 1, 1990, the chairman of the Workers' Compensation Commission and the comptroller have determined the total amount of expenses of the Workers' Compensation Commission in accordance with the provisions of subsection (d) of section 31-280, the treasurer shall thereupon assess upon and collect from each employer, other than the state and any municipality participating for

bursements for payments made pursuant to § 7-433c. The legislature's use of words to itemize the situations that bring a statute into play connotes the legislative intent to exclude that which is not included. *Stuart* v. *Dept. of Correction*, 221 Conn. 41, 601 A.2d 539 (1992); *State* v. *Kish*, 186 Conn. 757, 765, 443 A.2d 1274 (1982). The fund was created, not to serve the purposes found in § 7-433, but to serve those in the Workers' Compensation Act, General Statutes § 31-354 et seq.

purposes of its liability under this chapter as a member in an interlocal risk management agency pursuant to chapter 113a, the proportion of such expenses that the total compensation and payment for hospital, medical and nursing care made by such self-insured employer or private insurance carrier acting on behalf of any such employer bore to the total compensation and payments for hospital, medical and nursing care made by all such insurance carriers and self-insurers. The amount so secured shall be used to reimburse the treasurer for appropriations theretofore made by the state for the payment in the first instance of the expenses of administering this chapter. On and after July 1, 1986, the treasurer shall, as soon as possible after the close of a fiscal year ending prior to July 1, 1990, estimate the pro rata cost to each employer based upon the costs assessed to such employer in the immediately preceding fiscal year and shall assess upon and collect from each such employer such estimated costs annually which shall be payable as provided in subsection (a) of this section except each annual assessment shall include an amount which represents the difference between the payments collected and the actual costs assessed to such employer for the immediately preceding fiscal year. The treasurer is authorized to make credits or rebates for overpayments made under this subsection by any employer for any fiscal year.

"(2) Effective July 1, 1990, the chairman of the Workers' Compensation Commission shall annually, on or after July first of each fiscal year, determine an amount sufficient in his judgment to meet the expenses of the Workers' Compensation Commission. Effective July 1, 1991, such expenses shall include the costs of the rehabilitation division and the programs established by its director and the costs of the division of worker education and the programs established by its director. The treasurer shall thereupon assess upon and collect from each employer, other than the state and any municipality participating for purposes of its liability under this chapter as a member in an interlocal risk management agency pursuant to chapter 113a, the proportion of such expenses, based on the immediately preceding fiscal year, that the total compensation and payment for hospital, medical and nursing care made by such self-insured employer or private insurance carrier acting on behalf of any such employer bore to the total compensation and payments for the immediately preceding fiscal year for hospital, medical

Section 7-433c makes no reference to the fund. It begins with a declaration of its legislative purpose and is immediately followed by a clear, unambiguous description of who is to provide the specific benefits. It also clearly states who is to benefit from it. Section 7-433c (a) provides as follows: "In recognition of the peculiar problems of *uniformed members* of *paid fire departments* and *regular members* of *paid police departments*, and in recognition of the unusual risks attendant upon these occupations, including an unusually high degree of susceptibility to heart disease and hypertension . . . *municipal employers shall provide compensation as follows*: *Notwithstanding any provision of chapter 568* . . . in the event a *uniformed member* of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, *he*

---

and nursing care made by such insurance carriers and self-insurers, provided, effective July 1, 1991, such assessments for any fiscal year shall not exceed four per cent of such total compensation and payments made by such insurance carriers and self-insurers. Such assessments and expenses shall not exceed the budget estimates submitted in accordance with subsection (c) of section 31-280. Effective July 1, 1991, such assessments shall be made in one annual assessment upon receipt of the chairman's expense determination by the treasurer. All assessments shall be paid not later than sixty days following the date of the assessment by the treasurer. Any employer who fails to pay such assessment to the treasurer within the time prescribed by this subdivision shall pay interest to the treasurer on the assessment at the rate of eight per cent per annum from the date the assessment is due until the date of payment. On and after July 1, 1991, all assessments received by the treasurer pursuant to this subdivision shall be deposited in the Workers' Compensation Administration Fund established under section 31-344a. The treasurer is hereby authorized to make credits or rebates for overpayments made under this subsection by any employer for any fiscal year."

*or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568* if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment . . . . *The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568* or the municipal or state retirement system under which he is covered, *except as provided by this section,* as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. . . ." (Emphasis added.)

Section 7-433c clearly limits the source of benefits to the claimant's municipal employer. The statutory description of benefits begins, "the municipal employer shall provide." Throughout § 7-433c, the legislature limits the source of benefits to the municipal employee in clear, unambiguous language. The express language of § 7-433c provides for one and only one payor of the benefits of compensation and medical care: the municipal employer. The fund is not a municipal employer. The fund is never mentioned in § 7-433c as a payor or reimburser. Unlike § 7-433a,[2] which concerns benefits payable under chapter 568, § 7-433c provides only that benefits are calculated pursuant to chapter 568.

In reviewing § 7-433c, we note the difference in language compared to other related statutes. In General Statutes § 7-314a, concerning volunteer municipal fire-

---

[2] General Statutes (Rev. to 1991) § 7-433a, repealed in 1992, was the applicable statute at the time of this case.

fighters, the issue of compensation for heart disease and hypertension incorporates chapter 568 as the basis for liability.

General Statutes § 7-314a (d) provides: "For the purpose of adjudication of claims for the payment of *benefits under the provisions of chapter 568,* any condition of impairment of health occurring to an active member of a volunteer fire department while such member is in training for or engaged in volunteer fire duty, caused by hypertension or heart disease resulting in death or temporary or permanent total or partial disability, shall be presumed to have been suffered in the line of duty and within the scope of his employment, provided such member had previously successfully passed a physical examination by a licensed physician appointed by such department which examination failed to reveal any evidence of such condition." (Emphasis added.)

Similarly, General Statutes § 5-145a, with respect to certain state employees, provides: "*Any condition of impairment of health caused by hypertension or heart disease resulting in total or partial disability or death to a member* of the security force or fire department of The University of Connecticut . . . or to any state employee designated as a hazardous duty employee pursuant to an applicable collective bargaining agreement *who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of such condition, shall be presumed to have been suffered in the performance of his duty and shall be compensable in accordance with the provisions of chapter 568 . . . .*" (Emphasis added.)

Unlike those statutes, which expressly bring certain heart and hypertension cases within chapter 568, § 7-433c does not. Two Supreme Court cases have illustrated this point, *Plainville* v. *Travelers Indemnity Co.,*

supra, 178 Conn. 664, and *Bakelaar* v. *West Haven*, supra, 193 Conn. 59. Municipal employers had become liable to a dependent widow in *Plainville* and to an employee in *Bakelaar* pursuant to § 7-433c. The municipal employers then sought indemnification from their workers' compensation insurance carriers.

In both cases our Supreme Court definitively held that § 7-433c benefits are not benefits payable under any part of the Workers' Compensation Act. In *Plainville*, the court stated: "[W]e cannot conclude that benefits paid by an employer under General Statutes § 7-433c are benefits required by a 'workmen's compensation law' or 'occupational disease law' of this state. . . . To do so would require us to ignore the plain effect of this legislation and to contradict our own characterization of this legislation as 'providing special compensation, or even an outright bonus, to qualifying policemen and firemen.' *Grover* v. *Manchester*, 168 Conn. 84, 88, 357 A.2d 922 [1975]. *Moreover, our holding that § 7-433c is neither a 'workmen's compensation law' nor 'occupational disease law' within the meaning of the policy provisions of the insurance contract involved in this case is fortified by an examination of the discussion and debate on the floor of the state House of Representatives* prior to the passage of this statute which reveals a legislative understanding that payments made pursuant to this provision would not be within the coverage of traditional workmen's compensation insurance policies. The fact that a policy of insurance against liability under chapter 568 must cover the entire liability of the employee thereunder; General Statutes § 31-287; has no application to employer liability imposed by special bonus legislation unrelated to traditional workmen's compensation concepts." (Emphasis added.) *Plainville* v. *Travelers Indemnity Co.*, supra, 178 Conn. 673–74.

In *Bakelaar*, our Supreme Court again rejected the argument that the municipal employer's carrier should be liable for § 7-433c benefits. Our Supreme Court reiterated its holding in *Plainville* that § 7-433c is a right separate from workers' compensation under chapter 568.

The board supported its decision in the present case by relying on *Felia* v. *Westport*, 214 Conn. 181, 571 A.2d 89 (1991), and *Ancona* v. *Norwalk*, 217 Conn. 50, 584 A.2d 454 (1991). In each of these cases, our Supreme Court referred to § 7-433c as being the basis of eligibility, with compensation "in the same amount and same manner as that provided under chapter 568 . . . ." General Statutes § 7-433c (a). The issue of whether § 7-433c is a benefit separate from chapter 568 was not before the court in either of those cases, which did not overrule *Plainville* or *Bakelaar*. The issue in those cases was the calculation of benefits only. The question of whether anyone other than a municipality was liable for the payment of benefits was not at issue.

For the second injury fund to be liable for payment of an award, the award must have been made pursuant to the Workers' Compensation Act, or some other express statutory authorization for fund liability is required. As there is neither in this case, the board was incorrect and we, therefore, reverse and remand the case ordering that the fund is relieved of any liability.

The decision of the compensation review board is reversed and the case is remanded with direction to sustain the appeal by the second injury fund.

In this opinion the other judges concurred.